In re Melvin **GAINES** & Helen Jean Gaines, Debtors.

Melvin & Helen **GAINES,** Plaintiffs,

v.

Jay **APPLESON,** Tyrus L. Frerking & Lomas Nettleton, Defendants.

Bankruptcy No. 87–04883–W–13.
Adv. No. 87–0559–W–13.

United States Bankruptcy Court,
W.D. Missouri.

Jan. 27, 1988.

Thomas T. Wood, Independence, Mo., for plaintiffs/debtors.

Maurice B. Soltz, Kansas City, Mo., for defendants.

Rick Fink, Kansas City, Mo., Trustee.

## MEMORANDUM OPINION

FRANK W. KOGER, Bankruptcy Judge.

Debtors owned a house at 4236 Lister, Kansas City, Missouri. On October 23, 1987, Lomas and Nettleton as servicing agents obtained a non-judicial foreclosure of the property. Debtors were nine monthly payments behind on their note and clearly the house was not in good repair. The debt, interest and costs totaled $3,964.10 and the holder of the note bid that amount at the sale. There were a number of other bidders and the Trustee sold the property to one Jay Appleson for $6,101.00 at the conclusion of the auction. On November 6, 1987, Mr. Appleson sold the property to one Tyrus Frerking who is a real estate investor and who had been aware of the foreclosure sale. The consideration was $8,100.00. On November 12, 1987, debtors filed bankruptcy and this § 548 action was commenced.

This Court has previously held that once foreclosure has occurred, debtors do not have an interest in real estate other than a statutory redemption which does not come into play here for two reasons. First,

there was no evidence that debtors took the steps to preserve their statutory redemption right. Second, the note holder or its agent was not the successful bidder at the foreclosure sale. On the other hand, the Eighth Circuit has clearly enunciated the doctrine of "reasonably equivalent value" in *In re Hulm*, 738 F.2d 323 (8th Cir.) *cert. denied*, 469 U.S. 990, 105 S.Ct. 398, 83 L.Ed.2d 331 (1984), *on remand*, 45 B.R. 523 (Bankr.D.N.D.1984). Thus, the questions facing the Court are whether reasonably equivalent value was paid at the foreclosure sale and whether debtors fit the statutory requirements of § 548. The Court believes that reasonably equivalent value was not paid at the foreclosure and also believes that debtors do fall within the parameters of § 548.

As to the first issue, debtor Melvin Gaines testified that a similar house in the neighborhood had just sold for $24,000.00. The Jackson County Tax Assessor had appraised the market value at $23,000.00, and Mr. Gaines himself said the value was $18,-000.00, because of necessary repairs. The professional appraiser who had done his appraisal for Mr. Frerking said the value was $11,000.00 and showed three comparables ranging from $23,000.00 to $14,400.00 within a 10 block radius. Within three blocks, two comparables ranged from $22,-000.00 to $14,400.00. Even taking the $11,-000.00 figure, the foreclosure sale was for only 55.46% of value and therefore failed not only the 70% bright line rule of *Durrett v. Washington National Insurance Co.*, 621 F.2d 201 (5th Cir.1981) but also the reasonably equivalent value rule of *Hulm*, supra.

As to the second issue, a somewhat different picture emerges. Debtors' schedules listed five creditors: (1) Lomas & Nettleton for $3,964.00; (2) Friendly Furniture for $1,500.00; (3) Quick Furnace Co. for $7,500.00; (4) National Mortgage Co. for $56,000.00; (5) Perri Grinder, M.D. for $238.00. The total of the debts was thus $69,202.00. The debtors' assets were a house at 7522 Sycamore with a value of $59,000.00; the house foreclosed by Lomas and Nettleton valued at $23,192.00, a 1982 Ford valued at $1,000.00, a 1974 Chevrolet pickup valued at $200.00, household goods valued at $1,200.00, personal effects valued at $500.00, and a savings account valued at $200.00. Those assets total $85,292.00. Therefore, before the foreclosure, debtors were not insolvent. After the foreclosure without the mortgage balance of $3,964.00 and the estimated value of the Lister house from the respective totals, there was a debt balance of $65,238.00 and an asset balance of $62,000.00 plus some $2,100.00 overage on the foreclosure that has not yet been cashed by debtors. Section 101(31) defines "insolvent" as "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of ____ property that may be exempted ... under Section 522." It is easy to see that by applying this formula, debtors' debts exceeded their assets by some $5,000.00 and they were, therefore, insolvent.

No other issue has been raised by the pleadings nor by any party to this proceeding. It is, therefore, the ruling of the Court that the foreclosure was by definition a fraudulent transfer and must be set aside. However, the Court also recognizes that from § 548(c) it would appear that Lomas and Nettleton, Jay Appelson and Tyrus Frerking (at least on the surface) may well have liens on the property. The nature and extent of these liens may be the subject of further proceedings and debtors' plan must be amended to accommodate those interests as either the parties or the Court determines appropriate.

This Opinion constitutes Findings of Fact and Conclusions of Law as required by Rule 7052, Rules of Bankruptcy.